IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESUS SIERRA RAMIREZ, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:20-CV-3722-G-BH |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Jesus Sierra Ramirez (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. (*See* doc. 1.). Based on the relevant filings, evidence, and applicable law, the Commissioner's decision should be **REVERSED in part**, and the case should be **REMANDED** for further proceedings.

## I.    BACKGROUND

On October 6, 2017, Plaintiff filed his application for DIB, alleging disability beginning September 19, 2017. (doc. 18-1 at 178-81.)[2] His claim was denied initially on January 5, 2018 (*id.* at 62-71, 84-91), and upon reconsideration on April 24, 2018 (*id.* at 72-83, 96-100). On June 13, 2018, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 102-03.) He appeared and testified at a hearing on February 12, 2020. (*Id.* at 39-61.) On March 20, 2020, the ALJ issued a decision finding him not disabled. (*Id.* at 13-31.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council on November 23, 2019.

---

[1] By *Special Order 3-251*, this social security appeal was automatically referred for proposed findings of fact and recommendation for disposition.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(*Id.* at 185.) The Appeals Council denied his request for review on October 27, 2020, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-12.) He timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (doc. 1.)

## A.  Age, Education, and Work Experience

Plaintiff was born on October 4, 1965, and was 54 years old at the time of the hearing. (doc. 18-1 at 180.) He had a high school education[3] and was able to communicate in English.[4] (*Id.* at 30.)  He had past relevant work as a floor waxer. (*Id.* at 55.)

## B.  Psychological and Psychiatric Evidence[5]

In 2016, Plaintiff sustained a hand injury at work. (*Id.* at 724-25.) In 2017, he had two amputations to his left index finger. (*Id.* at 415-18.)

On December 18, 2017, Amita Hegde, M.D., a state agency medical consultant (SAMC), completed a physical Residual Functional Capacity (RFC) assessment based on the medical evidence. (*Id.* at 66-68.) She opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push and/or pull except as limited by the lift and/or carry restrictions. (*Id.* at 66.) He could frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and occasionally climb ladders, ropes, or scaffolds. (*Id.* at 67.) He could also feel and reach in any direction including overhead but was limited in handling and fingering with his left hand. (*Id.*) Dr. Hegde determined that Plaintiff's alleged limitations were "partially supported" by

---

[3] Plaintiff's initial application indicated he had a high school education, but he testified he had a fifth grade education. (doc. 18-1 at 45.)

[4] The record shows that Plaintiff was unable to speak and/or understand English and required the assistance of an interpreter. (*Id.* at 39, 41, 44, 208, 249, 266, 290.)

[5] Because only Plaintiff's mental impairments are at issue, limited physical medical evidence is noted.

the medical and other evidence of record. (*Id.* at 68.) She made no finding as to Plaintiff's mental limitations. (*Id.* at 62-70.)

On January 11, 2018, at a worker's compensation meeting, Plaintiff reported decreased pain in his left hand; he was alert and oriented times three, and his mood/affect was normal. (*Id.* at 556-58.)

On February 12, 2018, Plaintiff presented to the emergency room at Parkland Hospital complaining of pain in his right upper and left lower extremities. (*Id.* at 738-42.) On psychiatric exam, his mood and affect were normal. (*Id.* at 740.) At discharge, his pain had improved. (*Id.*)

On March 5, 2018, Plaintiff presented to Donald Mondragon, M.D., to "establish care." (*Id.* at 822.) He was alert, oriented times three, and had normal appearance. (*Id.* at 823.) He endorsed one episode of suicidal thoughts and was positive for depression. (*Id.* at 824.) He was given a 6-week follow-up and referred to counseling. (*Id.*)

On April 16, 2018, Plaintiff presented to Child and Family Guidance Center for an initial psychiatric evaluation. (*Id.* at 1107-10.) He reported depressed mood, anxiety, anhedonia, and poor sleep. (*Id.* at 1107.) He had logical thought content, depressed mood or affect, intact memory, average intelligence, and good concentration, insight and judgment. (*Id.* at 1109-10.) He was diagnosed with depression and a GAF of 95. (*Id.* at 1110.)

On April 19, 2018, SAMC Jeanine Kwun, M.D., generally affirmed Dr. Hegde's physical RFC assessment, except she opined that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. (*Id.* at 78-80.) Dr. Kwun made no finding regarding his mental limitations. (*Id.* at 72-82.)

On June 25, 2018, Plaintiff returned to Dr. Mondragon for a follow up. (*Id.* at 1075-76.) His appearance was normal and he was alert and oriented times three, but had depressed mood and

affect. (*Id.* at 1075.)

On October 11, 2018, Plaintiff returned to the Child and Family Guidance Center and reported that his medications had been working well. (*Id.* at 1103.)  His mood or affect was euthymic, and his thought process or content was goal-directed. (*Id.*) He was continued on his current medications. (*Id.*)

On January 28, 2019, Plaintiff returned to Dr. Mondragon for right arm pain. (*Id.* at 1088-90.) Dr. Mondragon noted that Plaintiff had seen a psychiatrist at Child and Family Guidance Center for over a year and was treated for depression; Plaintiff was alert and oriented times three and his general appearance was normal. (*Id.* at 1088.) Moderate depression was assessed, and he was observed as stable on medication. (*Id.* at 1089.)

On January 31, 2019, Plaintiff reported that his medications were not working well, and his sleep was poor. (*Id.* at 1101.) His mood/affect was anxious. (*Id.*) The dosages of Zoloft and Trazodone were increased.  (*Id.*)

On March 7, 2019, Dr. Mondragon completed a Statement of Disability, assessed Plaintiff with moderate depression, and opined he was permanently unable to work. (*Id.* at 744.) No physical examination was attached. (*Id.*) On March 26, 2019, Plaintiff complained of ear irrigation. (*Id.* at 1093.) His mood and affect were depressed and sad. (*Id.*)

On May 1, 2019, during a worker's compensation visit, Plaintiff denied anxiety/nerves, depression, or sleep difficulties. (*Id.* at 829-32.) He had normal mood and affect and was assessed as having major depressive disorder. (*Id.* at 830-31.)

On May 30, 2019, Plaintiff complained of increased depression and racing thoughts, and he was started on Wellbutrin. (*Id.* at 1099.)

On September 19, 2019, Plaintiff had run out of his medications for one month; he was

somewhat depressed, and his mood or affect was anxious. (*Id.* at 1097.) He was re-started on his medications. (*Id.*)

On November 5, 2019, Plaintiff visited Hope Clinic and complained of worsening back pain. (*Id.* at 1053-57.) He had normal memory and "inappropriate" mood and affect. (*Id.* at 1056.) He was assessed with major depressive disorder, recurrent, moderate, chronic. (*Id.*) On November 14, 2019, he reported that his medications were partially working, and his dosage of Remeron was increased. (*Id.* at 1096.)

On December 17, 2019, he returned to Hope Clinic for a follow up. (*Id.* at 1047-52.) He was "positive" for psychiatric symptoms but denied homicidal or suicidal ideation. (*Id.* at 1049.) He was oriented times four and had normal memory, insight and judgment, but his mood and affect were inappropriate. (*Id.* at 1050.)

## C.  February 12, 2020 Hearing

On February 12, 2020, Plaintiff and a vocational expert (VE) appeared and testified at a hearing before the ALJ. (*Id.* at 39-61.) Plaintiff was represented by an attorney, and a Spanish interpreter was present. (*Id.* at 41.)

### 1.  *Plaintiff's Testimony*

Plaintiff testified that he lived in Waxahachie, Texas, with his wife and three daughters. (*Id.* at 44.) Although he had reported on the function report that he was right-handed and had completed high school, he was left-handed and had a fifth grade education. (*Id.* at 44-47.) He had a driver's license and drove only to the clinic when necessary. (*Id.* at 45.) He weighed 180. (*Id.*)

From 2005 to 2017, Plaintiff worked in floor care at healthcare companies; he had not supervised anyone or had the ability to hire or fire anyone. (*Id.* at 47-48.) He was fired after his injury because he was unable to work with his hands, and he had not worked since then. (*Id.* at

48.) Additional surgery on his left arm was recommended, but he had not gotten treated for his back and arm because he lacked insurance. (*Id.*) He went to physical therapy and did home exercises for his wrist. (*Id.* at 49.)

Plaintiff's left hand hurt, and he could not move it "a lot." (*Id.*) He used to write with his left hand and had started to write with his right hand. (*Id.*) He could not hold a gallon of milk in his left arm or left hand, and he could not hold a piece of paper because he could not bend his fingers. (*Id.* at 50, 53.) He sometimes dropped things, and he was only able to lift his left arm and move his fingers "a little bit." (*Id.*) His wife helped him dress and bathe. (*Id.* at 50-51.) Because of back pain and arm pain every 10 to 20 minutes, he was unable to do household chores. (*Id.* at 53.) He could sit for 20 minutes at a time, stand for 15 minutes at a time, and walk for 20 minutes at a time before he needed a break. (*Id.* at 51, 53-54.) Due to shoulder pain, it was difficult to stretch his hands completely. (*Id.* at 54.) He had constant shoulder, back and hand pain. (*Id.*)

Plaintiff had been treated at Child and Family Guidance Center more than two years prior; he did not remember the exact date, and he forgot things. (*Id.*) Since starting treatment, he had been prescribed medication for depression and to help him sleep. (*Id.* at 51-52.) He was also prescribed Hydrocodone, which he had continued to take every 4 hours. (*Id.* at 52-53.)

   *2.   VE's Testimony*

The VE confirmed that the resume in the file is a true description of her professional qualifications, there had not been any prior personal or professional contact between her and Plaintiff, and she could give a neutral opinion even though the Social Security Administration was paying her fee. (*Id.* at 54-55.) Plaintiff had past work as a floor waxer, DOT 381.687-034 (medium,

unskilled, SVP-2)[6], and had no transferable skills. (*Id.* at 55, 57.)

The VE considered a first hypothetical individual with Plaintiff's age and education who could perform light exertional work, as defined by the regulations, and frequently climb ramps and stairs but not ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl; frequently (but not constantly) reach with the bilateral upper extremities; frequently handle with the non-dominant right upper extremity or hand; occasionally handle and finger with the dominant left upper extremity or hand; and occasionally push and pull for operation of hand controls with the bilateral upper extremities. (*Id.* at 55-56.)[7] The individual could not perform any of Plaintiff's past work. (*Id.* at 56.) There were other jobs that this individual could perform, including furniture rental consultant, DOT 299.357-018 (light, SVP-2), with 52,000 jobs nationally; and bakery line worker, DOT 524.687-022 (light, SVP-2), with about 9,000 jobs nationally. (*Id.* at 57.)

The VE considered a second hypothetical individual with the same limitations as the first, but who could understand, remember, carry simple tasks; make simple, routine work-related decisions or judgment; tolerate routine workplace changes; and sustain two-hour blocks of attention without requiring redirection because any time off task could be accommodated by normal breaks. (*Id.*) The individual could perform the two jobs identified. (*Id.*)

The VE considered a third hypothetical individual with the same limitations as the first, except the individual could also occasionally feel with the dominant left upper extremity. (*Id.* at 58.) The individual could perform the two jobs identified. (*Id.*)

Her testimony was consistent with the information found in the DOT and its companion

---

[6] SVP stands for Specific Vocation Preparation.

[7] The ALJ had two reports of either a limited, or a high school, education. (*Id.* at 55.)

publication, the SCO.[8] (*Id.*) Because the DOT addressed reaching in all directions and bilateral

reaching, handling and fingering, the VE based her answer on her education and her experience in

analyzing jobs and placing individuals with disabilities. (*Id.*)

On cross-examination, the VE testified that an individual who could not communicate in

English could perform the bakery line worker job but not the furniture rental consultant job. (*Id.*

at 58-59.) An individual who was limited to occasional bilateral reaching overhead with both hands

and occasional reaching in front and in all directions would be able to perform the bakery line

worker job. (*Id.* at 59.)

The duties of the bakery line worker included any combination of the following: visually

inspecting baked goods or crackers on the conveyor line, removing defective products occasionally

(or less than occasionally), and placing them in a rejection bin. (*Id.* at 59.) The DOT did not provide

information on how many times per hour products are removed; it only said it occurred one third

of a day or less. (*Id.* at 59-60.) An individual who needed off-task breaks lasting 10 to 15 minutes

every 30 minutes could not perform that work. (*Id.* at 60.)

## D.  **ALJ's Findings**

The ALJ issued a decision denying benefits on March 20, 2020. (*Id.* at 13.) At step one,

she found that Plaintiff had met the insured status requirements through December 31, 2021, and

had not engaged in substantial gainful activity since the alleged onset date of September 19, 2017.

(*Id.* at 21.) At step two, the ALJ found that since the alleged onset date, he had the severe

impairments of "lumbar and cervical radiculopathy, adhesive capsulitis of the right shoulder with

hand muscle weakness, left hand lesion of radial nerve status post [scaphotrapeziotrapezoidal]

---

[8] SCO stands for Selected Characteristics of Occupations.

fusion and radial styloidectomy and left wrist release, ray amputation of the left index finger with revision in October 2019, and major depressive disorder." (*Id.* at 24) (citing (20 C.F.R. § 404.1520(c)). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* at 26.) The ALJ specifically noted that she had considered Listing 12.04. (*Id.*)

Next, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: frequently climb ramps and stairs but not climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; engage in frequent, but not constant, overhead reaching with the bilateral upper extremities; frequently handle with the non-dominant right upper extremity/hand, but only occasionally handle, finger, and feel with the left dominant upper extremity/hand; and occasionally push/pull for operation of hand controls with the bilateral upper extremities. (*Id.* at 27.) Plaintiff had the mental RFC to understand, remember, and carry out simple, routine tasks; make simple routine work-related decisions or judgments and tolerate routine workplace changes; and sustain attention for up to two-hour blocks of time without requiring redirection to task because any time off task could be accommodated by normal breaks. (*Id.*) At step four, the ALJ determined that Plaintiff was unable to perform his past work. (*Id.* at 30.) At step five, she found that transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that he was not disabled whether or not he had transferable job skills, but considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.*) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from September 19, 2017,

through the date of her decision. (*Id.* at 31.)

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638,

640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational

testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.    ISSUES FOR REVIEW

Plaintiff presents two issues:

1. An ALJ must evaluate a claimant's ability to speak, understand, and read and write in English when evaluating what work the claimant can perform. The ALJ did not consider the evidence of record that establishes [Plaintiff] is unable to communicate in English, and she did not include any limitation in [Plaintiff]'s ability to communicate in English in the hypothetical question to the VE. Did the ALJ err harmfully in failing to consider the evidence of [Plaintiff]'s inability to communicate in English, and does VE testimony support the step five finding?

2. An ALJ may not rely on her own unsupported opinion as to the limitations presented by a claimant's medical conditions. The ALJ did not identify any medical opinion that was the basis for the mental RFC finding. Can the ALJ's RFC assessment be supported by substantial evidence if she relied on her own lay interpretation of the objective medical data to reach such finding?

(doc. 21 at 5.)

### A.  *Ripley* Error[9]

Plaintiff argues that the ALJ's mental RFC determination was without medical support. (doc. 21 at 5, 25.) The Commissioner responds that substantial evidence supports the ALJ's decision and that the ALJ properly assessed Plaintiff's mental RFC. (doc. 22 at 2, 5.)

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the claimant argued that the ALJ failed to develop the record fully and fairly by finding that he could perform sedentary work even though there was no medical testimony to support that conclusion. The Fifth Circuit noted that although

---

[9] Although listed second, Plaintiff's issue regarding the ALJ's consideration of medical opinions implicates the RFC assessment, which comes before the step five issue implicating his education and ability to speak English. *See* 20 C.F.R. § 404.1520(a)(iv)-(v); *Feliciano Velez v. Berryhill*, No. 3:18-CV-01101 (SALM), 2019 WL 1468141, at *5 (D. Conn. Apr. 3, 2019) ("A claimant's ability to communicate in English is evaluated as a vocational factor of education at step five of the sequential evaluation.") (collecting cases). It is therefore addressed first.

an ALJ should usually request a medical source statement describing the types of work that the applicant was still capable of performing, the absence of such a statement did not necessarily make the record incomplete. *Ripley*, 67 F.3d at 552. Rather, the court had to consider whether there was substantial evidence in the record to support the ALJ's decision. *Id.* The record contained "a vast amount of medical evidence" establishing that the claimant had a back problem, but it did not clearly establish the effect of that problem on his ability to work, so the ALJ's RFC determination was not supported by substantial evidence. *Id.* The Fifth Circuit remanded the case with instructions to the ALJ to obtain a report from a treating physician. *Id.* at 557-58. Notably, it rejected the Commissioner's argument that the medical evidence discussing the extent of the claimant's impairment substantially supported the ALJ's RFC assessment, finding that it was unable to determine the effects of the claimant's condition on his ability to work absent reports from qualified medical experts. *Id.* at 558 n.27; *see also Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) ("*Ripley* clarifies that an [ALJ] cannot determine from raw medical data the effects of impairments on claimants' ability to work.").

Here, the ALJ noted that the SAMCs had not made any findings regarding Plaintiff's mental limitations. (doc. 18-1 at 29.) She considered Dr. Mondragon's March 2019 statement of disability and his opinion that Plaintiff was permanently disabled due to his diagnoses, which included moderate depression. (*Id.* at 30 (citing *id.* at 744.)) The ALJ specifically found it "not persuasive" because the issue of disability is reserved for the Commissioner, and because Dr. Mondragon did not provide any explanation as to how these diagnoses resulted in limitations. (*Id.*) The ALJ considered the finding in the intake psychiatric evaluation by the Family and Guidance Center that Plaintiff presented with intact memory, noting that he had been diagnosed with depression and had intermittent treatment. (*Id.* at 29-30 (citing *id.* at 1107-10.)) She also noted that

13

Plaintiff's mental status examinations had shown euthymic mood, logical thought content, intact memory, average intelligence, and good concentration, insight and judgment. (*Id.* (citing *id.* at 1103, 1107-10.)) The ALJ considered that Plaintiff's medications had been working well, that they were increased when they were not working well, and he presented with a depressed mood when he had been out of medication for one month, which suggested his symptoms were, and could be, managed with treatment. (*Id.* (citing *id.* at 1096-97, 1099, 1101, 1103.))

There are no medical opinions in the record regarding the effects that Plaintiff's depression had on his ability to work. The ALJ did not explain how she determined that Plaintiff was able to understand, remember, and carry out simple, routine tasks; make simple routine work-related decisions or judgments and tolerate routine workplace changes; and sustain attention for up to two-hour blocks of time without requiring redirection because any time off task could be accommodated by normal breaks. (*Id.* at 27.) She therefore appears to have relied on her own interpretation of the medical and other evidence, which she may not do. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("An ALJ may not–without the opinions from medical experts–derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."); *see also Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination); *Davis v. Astrue*, No. 1:11-CV-00267-SA-JMV, 2012 WL 6757440 (N.D. Miss. Nov. 6, 2012) ("In formulating a claimant's RFC, the ALJ-a layperson-may not substitute his own judgment for that of a physician."), *adopted by* 2013 WL 28068 (N.D. Miss. Jan. 2, 2013). Consequently, substantial evidence does not support the ALJ's RFC determination. *See Geason v. Colvin*, No. 3:14-CV-1353-N, 2015 WL 5013877, at *5

(N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence."); *Medendorp v. Colvin*, No. 4:12-CV-687-Y, 2014 WL 308095, at *6 (N.D. Tex. Jan. 28, 2014) (finding because the ALJ rejected the only medical opinion in the record that he had analyzed that explained the effects of the claimant's impairments on her ability to perform work, there was no medical evidence supporting the ALJ's RFC determination); *Lagrone v. Colvin*, No. 4:12-CV-792-Y, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 22, 2013) (finding substantial evidence did not support the ALJ's RFC determination where the ALJ rejected all medical opinions in the record that might explain the effects of the claimant's physical impairments on his ability to perform work and where there were no such opinions as to claimant's mental impairments).

**B. Harmless Error**

Because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected," Plaintiff must show he was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing his RFC. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). To establish prejudice, he must show that the ALJ's failure to rely on a medical opinion as to the effects his impairments had on his ability to work casts doubt onto the existence of substantial evidence supporting the disability determination. *See McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

The ALJ's failure to rely on a medical opinion regarding Plaintiff's mental RFC casts

doubts as to whether substantial evidence exists to support the finding that he is not disabled. *See Williams*, 355 F. App'x at 832 (finding the decision denying the claimant's claim was not supported by substantial evidence because the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining the RFC); *see also Thornhill*, 2015 WL 232844, at *11 (finding prejudice "where the ALJ could have obtained evidence that might have changed the result—specifically, a medical source statement"); *Laws v. Colvin*, No. 3:14-CV-3683-B, 2016 WL 1170826 (N.D. Tex. Mar. 25, 2016) (reversing and remanding for further proceedings for lack of substantial evidence because the ALJ's failure to rely on a medical opinion in determining the plaintiff's RFC). Accordingly, the error is not harmless, and remand is required on this issue.[10]

## IV.    RECOMMENDATION

The Commissioner's decision should be **REVERSED in part**, and the case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on this 4th day of April, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] Because remand is recommended based on the ALJ's *Ripley* error, and determination of Plaintiff's RFC on remand will likely affect the remaining issues, they will not be addressed here.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE